UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEITH EDWARD CARMEL,

                              Petitioner,

-vs-                                                              DECISION AND ORDER

H. GRAHAM,                                                 6:17-CV-6050 CJS

                              Respondent.

_____

INTRODUCTION

Petitioner Keith Carmel ("Carmel" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in New York State Supreme Court, Monroe County, for Burglary in the Second Degree, Criminal Possession of a Forged Instrument in the Second Degree and Criminal Possession of Stolen Property in the Fourth Degree, for which he was sentenced, as a persistent violent felony offender, to prison for terms of 16 years to life , 3 years and 6 months to 7 years, and 2 to 4 years, respectively.  The Petition asserts ten claims but the primary issue presented is whether there was legally sufficient evidence to convict Petitioner of burglary. For the reasons explained below, the petition for a writ of habeas corpus is denied.

BACKGROUND

The following is a summary of the relevant facts.  On the night of July 15, 2010, or the early morning hours of the next day, a home in the Town of Brighton, New York, was burglarized. As the residents of the home slept, an intruder entered the house through an unlocked door and stole a variety of items including a purse, several backpacks and a bicycle.  The intruder evidently took the items outside behind some trees where he rifled through the purse and backpacks, removing items such as cash and a credit card.  Two

of the backpacks, along with the purse and most of its contents, were left behind on the lawn, but one of the backpacks, the bicycle and a credit card were taken from the property. No one witnessed the burglary, and the intruder left behind no fingerprint or DNA evidence that was discovered.

Shortly after the break-in, at approximately 12:50 a.m. on July 16, 2010, the stolen credit card was used to make a purchase at the Wegmans supermarket on East Avenue in the City of Rochester, slightly more than one mile from the burglarized residence.  Video cameras at the entrance to the Wegmans store showed a white male arriving at the store minutes before the purchase, with a bicycle and a backpack.  Other surveillance cameras inside the store captured the same individual using the stolen credit card to purchase Mastercard gift cards and other miscellaneous items in the amount of $219.01.

Attempting to identify the individual shown in the Wegmans surveillance video, the Brighton Police Department issued a Crime Information Bulletin to local law enforcement agencies.  Charles Bour ("Bour"), the Bureau Chief of the New York State Parole Division office in Rochester, saw the video accompanying the bulletin and immediately recognized the individual shown as one of his parolees, the petitioner, Keith Carmel.  In a supporting deposition, Bour indicated that Petitioner was a parolee assigned to the Rochester office, and that he had known Petitioner "as a parolee for about 15 years."   In that regard, Petitioner was under parole supervision at that time and had a lengthy criminal history including several prior convictions for burglary.

On July 26, 2010, the Brighton Police Department filed a felony complaint in Brighton Town Court, charging Petitioner with Burglary in the Second Degree and Grand Larceny in the Fourth Degree.   Brighton Town Court declined to issue an arrest warrant at that time, requesting additional information before doing so.   Brighton Police

Department continued its investigation and eventually provided additional information to the court which, on August 28, 2010, issued a warrant for Petitioner's arrest.  On August 28, 2010, the Monroe County District Attorney was informed that the arrest warrant had been issued, and on August 30, 2010, the District Attorney received from Brighton Town Court faxed copies of the felony complaint and supporting depositions.

On August 31, 2010, Petitioner was arrested.

On February 10, 2011, a Monroe County Grand Jury returned a three-count indictment charging Petitioner with Burglary in the Second Degree in violation of New York Penal Law ("PL") § 140.25(2), Criminal Possession of a Forged Instrument in the Second Degree in violation of PL § 170.25,  and Criminal Possession of Stolen Property in the Fourth Degree in violation of PL § 165.45(2), all relating to the break-in discussed earlier.

On February 28, 2011, Petitioner was arraigned on the Indictment, at which time the People announced their readiness for trial.  At that time, Petitioner acknowledged that he was back in state prison after pleading guilty to a parole violation.  In particular, he stated that following his arrest in August 2010 he had been charged with a parole violation relating to the burglary, but that he had pleaded guilty to a lesser violation in exchange for a fifteen-month sentence.

On February 24, 2012, just prior to the start of the trial, Petitioner moved to dismiss the burglary count of the Indictment as untimely under New York Criminal Procedure Law § 30.30, arguing that the People had not announced their readiness for trial until more than six months after July 26, 2010, the date that the felony complaint was first submitted to Brighton Town Court.  However, the trial court denied the application, pursuant to CPL § 30.30 (4)(g), finding that the District Attorney had no notice of the matters in Brighton

3

Town Court prior to August 30, 2010, and that the People had announced their readiness for trial within six months after that date.

On February 29, 2012, the jury trial began.  The Prosecution's case consisted of testimony from Wegmans' employees concerning the video and electronic evidence relating to the use of the credit card shortly after the burglary, testimony from the police officers who investigated the break-in, testimony from Parole Officer Bour concerning his acquaintance with Petitioner and his recognition of Petitioner on the Wegmans surveillance video, and testimony from the homeowner victims concerning the circumstances of the break-in and the property that was taken.

At the close of the Prosecution's case defense counsel made a motion for a trial order of dismissal as to all counts of the indictment, which the trial court denied.

The Defense did not put on a case.  Instead, defense counsel attempted to show, through his cross-examination of the prosecution witnesses, that Wegmans' camera system and computer system were unreliable; that the video evidence relied upon by the prosecution was selective in that it did not show, for example, from which direction the individual shown had come before arriving at the store;  that there was no direct evidence as to who had actually entered the victims' home and removed the property; that the burglarized residence was in a heavily populated area, and that it was possible that Petitioner might have merely found the stolen property after it was discarded by the actual burglar; and that it was not possible for the victims to positively identify the bicycle and backpack shown in the surveillance video (which were never recovered) as belonging to

4

them.[1]  Although, there was no dispute that the credit card used at the Wegmans was the same one that had been stolen from the victims.

Defense counsel did not cross-examine Bour concerning his identification of Petitioner as the person shown in the Wegmans surveillance video.  In that regard, during the charging conference, defense counsel noted that he had intentionally avoided cross-examining Bour, who had been identified to the jury only as an "employee of New York State," evidently in order to avoid opening the door to testimony about how Bour knew Petitioner.[2]

In his summation, defense counsel emphasized the concept of reasonable doubt and argued that, in addition to there being no direct evidence that Petitioner entered the victims' home, the evidence did not show that Petitioner had been in recent and exclusive possession of the property taken during the burglary.[3]  Counsel also urged the jury to disregard the testimony from the Wegmans employees, arguing that, since there was a discrepancy in the time-stamp on one of the video recordings (apparently related to the change to daylight savings time) the jury should view all of the computer and electronic evidence from Wegmans with skepticism.

---

[1] The homeowners, husband and wife, both testified concerning the Wegmans video.  The husband testified that he recognized the bicycle and backpack as belonging to his family, and that in particular, he recognized the brand of his bicycle (Bianchi), as well as tape and writing on his son's backpack. ECF No. 12-3 at p. 684–686, 691–694, 699.  On cross-examination, the husband acknowledged that while the bicycle had the same brand and appearance as his, he could not definitively say that the bicycle in the video was his. *Id.* at 694.  The wife testified that the bicycle and backpack shown in the Wegmans video appeared to be those belonging to her husband and son, respectively. *Id.* at pp. 711–712.  On cross-examination, she agreed that she could not positively identify the items without closer inspection. *Id.* at pp. 714–715.

[2] *See*, ECF No. 12-3 at p. 50; *id.* at p. 739 ("In and out was fine with me.  Notice I didn't ask him any questions at all.  Get him out of here.").

[3] Counsel argued, for example, that the burglary had occurred possibly hours before, and more than a mile away, from the Wegmans store.

On March 6, 2012, the jury returned a verdict of guilty on all three counts in the Indictment.

On July 11, 2012, the trial court sentenced Petitioner as a persistent violent felony offender, for the burglary conviction to a term of 16 years to life imprisonment, and for the remaining two convictions, to concurrent terms of 3 years and 6 months to 7 years and 2 to 4 years imprisonment, respectively.

On July 11, 2012, Petitioner filed a Notice of Appeal.  Petitioner's counseled brief raised three issues on appeal: 1) the evidence at trial was legally insufficient to sustain the burglary conviction; 2) the conviction on the burglary count was against the weight of the evidence; and 3) trial counsel was ineffective for failing to challenge the identification made by Bour.  Opposing the appeal, the People stated, in part, that the jury had been properly instructed, and that it was logical and proper for the jury to infer that the person seen in possession of the credit card, bicycle and backpack shortly after the burglary was the burglar himself:

> [T]he evidence was legally sufficient to convict defendant of burglary in the second degree. [At trial, the evidence suggested that the burglar had carried the stolen property out onto the victims' lawn where he sorted it, and then consolidated the choicest property into one backpack, leaving behind the rest, before leaving on the stolen bicycle and heading to the nearest open 24-hour store to use the credit card before its theft was discovered by its owner.]  And indeed, defendant ended up with the choicest property: an expensive bike and a working credit card. The jury was entitled to draw the reasonable inference that only the burglar would have possessed this type of property so soon after the break-in.
>
> After all, in this case the jury was charged with the statutory presumption of recent and exclusive possession (CJI2d[NY] - Inference of Participation in Theft Arising from Recent, Exclusive Possession of Stolen Property). The court told the jurors, "Under our law, if the People prove beyond a reasonable doubt that the defendant was in exclusive possession of

property recently stolen during a burglary and that there is no innocent explanation for that possession, then you may, but are not required to, infer that the possession was guilty possession" (TM 544). Importantly, the jury instruction went on, "If you draw that inference, you must then decide whether or not the defendant's guilty possession was the result of his participation in the crime during which the property was stolen" (TM 544).

Recent, exclusive possession of the fruits of a crime is sufficient evidence to convict a defendant of that underlying crime. Under the presumption, "evidence of unexplained or falsely explained possession of recently stolen property is sufficient to establish a prima facie case and to enable a jury to find guilt beyond a reasonable doubt" (*People v Baskerville*, 60 NY2d 374, 382 [1983]). Such has been the law as recognized in this state for over a century (*see People v Galbo*, 218 NY 283, 290–291 [1916] ["Is the guilty possessor the thief, or is he a receiver of stolen goods? Judges have said that, if nothing more is shown, we may take him to be the thief']; *Knickerbocker v People*, 43 NY 177 [1870]).

Resp't's Br., SR 119-120.

On or about August 7, 2012, Petitioner filed a *pro se* applications to vacate his convictions pursuant to CPL § 440.10.[4]  The application raised the following arguments: denial of statutory and Sixth Amendment right to speedy trial; insufficient evidence before the grand jury to indict; insufficient evidence of possession of stolen property; insufficient evidence of burglary; insufficient evidence that Petitioner used the stolen credit card; ineffective assistance of trial counsel for failure to cross-examine Bour; failure to give 710.30 notice that Bour would make identification; failure to introduce Crime Information Bulletin at trial; evidence from Wegmans employees was hearsay; prosecutor "withheld" witnesses by failing to have witnesses listed on the witness list testify at trial; *Brady* violation for failure to provide defense counsel with "search warrant;" and "defective accusatory instrument."

---

[4] ECF No. 12-2 at p. 30.

On January 23, 2013, the trial court denied the 440 application on procedural grounds pursuant to CPL § 440.10(2)(b), finding that the matters raised in the application could be raised in Petitioner's then-pending appeal. Petitioner did not appeal that ruling.

On April 30, 2014, Petitioner filed another pro se application pursuant to CPL § 440.10. Petitioner alleged that it was a violation of state law and of his federal constitutional rights that he was indicted on Count 2 and 3 of the Indictment without having previously been charged with those crimes in an accusatory instrument.

On July 11, 2014, the trial court denied the second 440 application, again pursuant to CPL § 440.10(2)(b), finding that the matters raised in the application could be raised in Petitioner's still-pending appeal. Petitioner did not appeal that ruling.

On April 29, 2016, the New York Supreme Court, Appellate Division Fourth Department ("Fourth Department") unanimously denied Petitioner's appeal on the merits. The Fourth Department held that there was legally sufficient evidence to support the burglary conviction, based on Petitioner's recent and exclusive possession of the property taken during the burglary, that the burglary conviction was not against the weight of the evidence, and that defense counsel's decision not to cross-examine Bour was a matter of trial strategy as opposed to ineffective assistance of counsel.

Petitioner requested leave to appeal to the New York Court of Appeals on the issue of the legal sufficiency of the evidence supporting the burglary conviction, as well as the claim of ineffective assistance of counsel, but on September 13, 2016, the Court of Appeals denied the application.

On January 23, 2017, Petitioner filed the subject habeas petition, proceeding *pro se*. The Petition purports to set forth ten separate grounds for relief: 1) there was legally insufficient evidence to support his conviction for Burglary (insufficient evidence that he

was the burglar and insufficient evidence of forcible entry into the home);  2) there was legally insufficient evidence to support his conviction for Possession of a Forged Instrument and Possession of Stolen Property, and those charges were not included in the felony complaint filed in Brighton Town Court; 3) the charges for Possession of a Forged Instrument and Possession of Stolen Property were not included in the felony complaint, and there was no evidence as to those crimes introduced in the Grand Jury; 4) "speedy trial" violation based on CPL § 30.30, or on the fact that he was taken into custody on July 28, 2010, and his trial did not begin until March 2012;  5) the testimony from Bour should have been kept out since Bour did not actually witness Petitioner at Wegmans and since the Prosecutor did not give notice of his intent to use an in-court identification; 6) Petitioner did not receive a "felony complaint hearing" following his arraignment on the felony complaint on September 7, 2010, but, instead, on September 13, 2010, he was held for action of the Grand Jury;  7) ineffective assistance of trial counsel based on three events: counsel's failure to cross-examine Bour, counsel's failure to object to the testimony of a Wegman's employee who testified concerning electronic records but was not present at the store when the credit card was used and counsel's failure to file a pre-trial motion objecting to the fact that the charges for Criminal Possession of a Forged Instrument and Criminal Possession of Stolen Property were not included in the Felony Complaint; 8) ineffective assistance of appellate counsel based on the following events: counsel's admission in the appellate brief that Petitioner had possessed stolen property and had been seen in possession of stolen property, counsel's failure to argue on appeal that the charges for Criminal Possession of a Forged Instrument and Criminal Possession of Stolen Property were not included in the Felony Complaint, counsel's failure to argue on appeal that there was no evidence that Petitioner had used

a stolen credit card or been in possession of stolen property, counsel's failure to argue on appeal that Petitioner had been denied a felony hearing, counsel's failure to argue on appeal that Petitioner did not have the opportunity to appear in the Grand Jury and counsel's failure to argue on appeal that the "whole case against Petitioner was based on hearsay"; 9) "uncharged crimes," relating to the fact that the Indictment did not accuse Petitioner of possessing a stolen bicycle or backpack, and that there was no evidence at trial that he possessed stolen property; and 10) "missing witness," relating to the fact that there was no testimony at trial from three persons who were included on the prosecution's witness list, namely, the Wegmans cashier who processed the transaction involving the stolen credit card, the police investigator who executed a search warrant or the police investigator who sent out  the Crime Information Bulletin.

The Petition alleges that Petitioner exhausted claim number 1, but admits that he did not exhaust claims number 2, 3, 4, 5, 6, 7, 8, 9 or 10.[5]  Petitioner maintains that to the extent he failed to exhaust these claims, it was due to ineffective assistance of counsel. The Petition also states that "most" of the unexhausted grounds were included in the 440 motions that Petitioner improperly filed while his direct appeal was pending.

On May 23, 2017, Respondent filed his Answer and Opposition to the Petition. (ECF Nos. 11 & 12).  As discussed further below, Respondent maintains that Petitioner's claims are all meritless, in addition to being procedurally barred and/or non-cognizable in a § 2254 habeas petition:

> Petitioner's first claim is partially unexhausted and entirely lacking in merit. His second claim is unexhausted, procedurally barred, and meritless. Claims three, four, six, and ten are not cognizable on federal habeas review. A portion of claim five also is not cognizable; the remaining

---

[5] Petitioner actually did exhaust the part of Claim 7 alleging ineffective assistance counsel based on counsel's failure to cross-examine Bour.

allegations in claim five are unexhausted and meritless. Claim nine is meritless. Petitioner's ineffective trial counsel [seventh] claim is without merit and his ineffective appellate counsel [eighth] claim is unexhausted and plainly meritless.

ECF No. 11 at p. 6.

On July 5, 2017, Petitioner filed a Reply (ECF No. 15) that reasserts the points in the Petition and generally maintains that there was no evidence submitted to support any of his convictions.

The Court has considered the parties' submissions and the entire record.  Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required. After considering the parties' submissions and the entire record, the petition is denied for the reasons set forth below.

## DISCUSSION

### Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Section 2254 Principles

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."

> *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624
> (2011). A number of requirements and doctrines . . . ensure the centrality
> of the state courts in this arena. First, the exhaustion requirement ensures
> that state prisoners present their constitutional claims to the state courts in
> the first instance. *See id.* (citing 28 U.S.C. § 2254(b)). Should the state court
> reject a federal claim on procedural grounds, the procedural default doctrine
> bars further federal review of the claim, subject to certain well-established
> exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97
> S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim
> on the merits, then the provisions of § 2254(d) come into play and prohibit
> federal habeas relief unless the state court's decision was either: (1)
> "contrary to, or involved an unreasonable application of, clearly established
> Federal law," or (2) "based on an unreasonable determination of the facts
> in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-
> (2). Finally, when conducting its review under § 2254(d), the federal court is
> generally confined to the record before the state court that adjudicated the
> claim. *See Cullen v. Pinholster*, ––– U.S. –––, 131 S.Ct. 1388, 1398–99,
> 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).  As just mentioned, regarding

claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim
> that was adjudicated on the merits in state court only if it concludes that the
> state court's decision "was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States" or "was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding." 28 U.S.C. § 2254(d)(1)–(2).
>
> A state court decision is contrary to clearly established Federal law if the
> state court arrives at a conclusion opposite to that reached by the Supreme
> Court on a question of law or if the state court confronts facts that are
> materially indistinguishable from a relevant Supreme Court precedent and
> arrives at a result opposite to the Supreme Court's result.
>
> A state court decision involves an unreasonable application of clearly
> established Federal law when the state court correctly identifies the
> governing legal principle but unreasonably applies it to the facts of the

particular case.  To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

<u>Unexhausted and Procedurally Defaulted Claims</u>

Respondent maintains that several of Petitioner's claims are unexhausted and/or procedurally defaulted.[6]  Specifically, Respondent contends that claims 2[7] and 8[8] are unexhausted and that Claim 2 is also procedurally defaulted, and that claims 1 and 5 are partially unexhausted.  According to Respondent, the aspect of claim 1 that is partially unexhausted is the argument that there was no evidence that the burglar forcibly entered the victims' home.  Respondent contends that argument is unexhausted and now procedurally defaulted.  Respondent contends that the portion of claim 5 relating to the

---

[6] *See, Smith v. Scully*, 588 F. App'x 16, 17 (2d Cir. 2014) (Because "were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, we must deem the claim procedurally defaulted." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir.2014) (quotation marks omitted)."); *see also, Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) ("In New York, a defendant may not collaterally attack a conviction based on a claim that he could have raised on direct appeal where he unjustifiably failed to raise it. N.Y.Crim. Proc. Law § 440.10(2)(c).").

[7] Claim 2 alleges that there was legally insufficient evidence to support the conviction for Possession of a Forged Instrument and Possession of Stolen Property, and that those charges were not included in the felony complaint filed in Brighton Town Court.

[8] Claim 8 alleges ineffective assistance of appellate counsel based on the following events: counsel's admission in the appellate brief that Petitioner had possessed stolen property and had been seen in possession of stolen property, counsel's failure to argue on appeal that the charges for Criminal Possession of a Forged Instrument and Criminal Possession of Stolen Property were not included in the Felony Complaint, counsel's failure to argue on appeal that there was no evidence that Petitioner had used a stolen credit card or been in possession of stolen property, counsel's failure to argue on appeal that Petitioner had been denied a felony hearing, counsel's failure to argue on appeal that Petitioner did not have the opportunity to appear in the Grand Jury and counsel's failure to argue on appeal that the "whole case against Petitioner was based on hearsay."

sufficiency of the evidence is unexhausted and now procedurally barred.  Respondent contends that while claim 8 is unexhausted, it is not procedurally defaulted since Petitioner could still bring a *coram nobis* motion on that claim in state court.  However, respondent argues that claim 8 should be denied on its merits.  In sum, Respondent contends that, except for claim 8,  all of these claims (claim 2 and parts of claims 1 and 5) are procedurally defaulted and should be denied on the merits, since Petitioner cannot show cause, prejudice or actual innocence, and that unexhausted-but-not-procedurally-defaulted claim 8 should be denied on its merits.

Petitioner does not dispute that these claims identified by Respondent are unexhausted and/or procedurally barred.  However, he maintains that the failure to exhaust is due either to ineffective assistance of counsel or to the fact that he did not know that he could appeal the denial of the two 440 motions that he filed while his direct appeal was pending.

From the recitation of the facts set forth earlier it appears to the Court that Petitioner exhausted only two of the claims that he is attempting to raise here: The claim that there is legally insufficient evidence to support the burglary conviction and the claim that trial counsel was ineffective for failing to cross-examine Bour.  Those are the only claims that Petitioner raised to both the Appellate Division and the Court of Appeals.  Consequently, it appears that all other claims in the Petition are unexhausted, and, except for claim 8, are also procedurally defaulted.

"That procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (citation omitted); *see also*, *St. Helen v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) ("In the case of procedural default (including where an unexhausted claim no longer

can proceed in state court), we may reach the merits of the claim "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citations omitted).")

Liberally construing Petitioner's papers, the Court understands him to claim "cause" due to his ignorance of the fact he could appeal the denial of his § 440 motions and to his appellate attorney's ineffectiveness.  The Court also understands Petitioner to be alleging that he is actually innocent.

As for Petitioner's claim that he did not know he could appeal the denial of his § 440 motions, that excuse is insufficient to establish cause.  *See, e.g., Parker v. Wenderlich*, No. 14-CV-5896 JG, 2015 WL 5158476, at *10 (E.D.N.Y. Sept. 2, 2015) ("Parker asserts that he was unfamiliar with how to appeal from a CPL § 440 motion[, however,], Parker's lack of familiarity with the law is not sufficient cause to excuse his default.") (collecting cases).  Moreover, Petitioner also could not demonstrate prejudice, since he has not claimed, nor is there any indication, that an appeal from either of those denials would have succeeded.

As for Petitioner's contention that his failure to exhaust was caused by the ineffectiveness of his appellate counsel, to establish cause he would need to show that his appellate attorney's performance amounted to ineffective assistance of counsel in violation of the Sixth Amendment. *See*, *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) ("A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel." ).  However, as will be discussed further below, Petitioner has not shown that

his appellate attorney was ineffective, and consequently he cannot rely on this argument to establish cause.

To the extent that Petitioner is claiming that he is actually innocent, the law applicable to such a claim is clear:

> The petitioner's burden in making a gateway showing of actual innocence is deliberately "demanding." *House v. Bell*, 547 U.S. at 538, 126 S.Ct. 2064; *see Schlup v. Delo*, 513 U.S. at 324, 115 S.Ct. 851 (observing that actual innocence claims are rarely successful); *accord McQuiggin v. Perkins*, 569 U.S. 383, 386, 401, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ("stress[ing] that the *Schlup* standard is demanding" and cases satisfying it "rare"). It requires, first, that petitioner adduce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324, 115 S.Ct. 851. In addition to being reliable, *i.e.*, credible, the evidence must be compelling. This second requirement demands "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316, 115 S.Ct. 851; *accord Rivas v. Fischer*, 687 F.3d at 541.
>
> The standard's demand for "evidence of innocence," *Schlup v. Delo*, 513 U.S. at 316, 115 S.Ct. 851 (emphasis added), references "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *accord Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002); *see also Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004) (Sotomayor, J.) ("As *Schlup* makes clear, the issue before [the] court is not legal innocence but factual innocence."). The new evidence need not demonstrate factual innocence to an "absolute certainty." *House v. Bell*, 547 F.3d at 538; *accord Rivas v. Fischer*, 687 F.3d at 542. But it must be sufficiently credible and compelling to allow a federal court to conclude that "more likely than not, in light of the new evidence, no reasonable juror would find [petitioner] guilty beyond a reasonable doubt— or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. at 538, 126 S.Ct. 2064; *see Schlup v. Delo*, 513 U.S. at 327, 115 S.Ct. 851; *Rivas v. Fischer*, 687 F.3d at 541.

As this court has recognized, this standard is "somewhat cryptic" in marrying a seemingly absolute requirement (no reasonable juror) to a probabilistic one (more likely than not). *Rivas v. Fischer*, 687 F.3d at 541 (*citing Schlup v. Delo*, 513 U.S. at 339, 115 S.Ct. 851 (Rehnquist, C.J., dissenting) (characterizing standard as "classic mixing of apples and oranges")). Nevertheless, this court has located some guidance for its application in contrasts that the Supreme Court has drawn between the Schlup standard and other familiar ones. *See id.*

Notably, *Schlup* emphasizes that "actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." 513 U.S. at 329, 115 S.Ct. 851. Further, a "more likely than not" showing as to what "no reasonable juror would have found" requires "a stronger showing than that needed to establish prejudice," but not so strong as that demanded by the "'clear and convincing' standard." *Id.* at 327, 115 S.Ct. 851; *see Rivas v. Fischer*, 687 F.3d at 541.

Further, the Court has stressed that *Schlup*'s actual innocence standard does not equate to the sufficiency-of-the-evidence standard in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* asks whether the trial evidence, viewed in the light most favorable to the prosecution, "could" allow any reasonable trier of fact to find a charged crime proved beyond a reasonable doubt. *Id.* By contrast, *Schlup*'s actual innocence standard considers a different "mix of evidence" from a different "vantage point." *Rivas v. Fischer*, 687 F.3d at 542. Specifically, a reviewing court assessing the probability of actual innocence is not limited to the trial record. To the contrary, it "must consider all the evidence, old and new, incriminating and exculpatory," *House v. Bell*, 547 U.S. at 538, 126 S.Ct. 2064 (internal quotation marks omitted), and, in doing so, "is not bound by the rules of admissibility that would govern at trial," *Schlup v. Delo*, 513 U.S. at 327, 115 S.Ct. 851. This is because, at the gateway stage of inquiry, a habeas court's task is not to identify trial error or to delineate the legal parameters of a possible new trial. It is to identify those cases in which a compelling showing of actual innocence would make it a manifest injustice to maintain conviction unless it was free of constitutional error. Thus, incriminating evidence obtained in the course of an unlawful search, or custodial admissions made in the absence of *Miranda* warnings, may well be inadmissible at trial. Nevertheless, such evidence is properly considered

> in assessing factual innocence, with the manner of procurement informing
> reliability and relevance and, therefore, weight.

*Hyman v. Brown*, 927 F.3d 639, 656–58 (2d Cir. 2019).

In this case, Petitioner has clearly not made a gateway showing of actual innocence, and he therefore cannot rely on actual innocence to allow the court to reach the merits of his defaulted claims.

To reiterate, the only claims that are not procedurally defaulted are the portion of Claim 1 alleging that there was legally insufficient evidence to support the burglary conviction, the portion of Claim 7 alleging that trial counsel was ineffective for failing to cross-examine Bour, and Claim 8, which alleges ineffective assistance of appellate counsel.   As for the remaining claims, they are procedurally defaulted and Petitioner has not shown cause, prejudice or actual innocence.   Accordingly, the procedurally defaulted claims are denied.

<u>Non-Cognizable Claims</u>

Respondent alternatively maintains that many of Petitioner's claims are "not cognizable" in a § 2254 habeas proceeding since they allege violations of state law. Specifically, Respondent contends that the following claims are non-cognizable: Claim 3;[9] Claim 4;[10] the portion of Claim 5 alleging that the prosecution failed under New York's Criminal Procedure Law to provide notice that Bour would be providing identification

---

[9] Claim 3 alleges that the charges for Possession of a Forged Instrument and Possession of Stolen Property were not included in the felony complaint, and there was no evidence as to those crimes introduced in the Grand Jury.

[10] Claim 4 alleges a "speedy trial" violation based on CPL § 30.30, or on the fact that Petitioner was taken into custody on July 28, 2010, and his trial did not begin until March 2012.

testimony ; Claim 6;[11] and Claim 10.[12]  The *pro se* Petitioner has not offered any legal argument in response, nor can his papers be liberally construed to raise any meritorious argument in that regard.

"A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention "violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Townsend v. Sain*, 372 U.S. 293, 311-312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Habeas petitions may not simply repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

As a preliminary matter, Respondent contends that Claim 4, alleging a speedy-trial violation, is not cognizable insofar as it is based on NY CPL § 30.30.  However, the Court

---

[11] Claim 6 alleges that Petitioner did not receive a "felony complaint hearing" following his arraignment on the felony complaint on September 7, 2010, but, instead, on September 13, 2010, he was held for action of the Grand Jury.

[12] Claim 10 alleges a "missing witness" claim, relating to the fact that there was no testimony at trial from three persons who were included on the prosecution's witness list, namely, the Wegmans cashier who processed the transaction involving the stolen credit card, the police investigator who executed a search warrant or the police investigator who sent out  the Crime Information Bulletin.

liberally construes Claim 4 as also alleging a Sixth Amendment[13] speedy trial claim unrelated to CPL § 30.30, based on the total amount of time between his arrest, in August 2010, and trial, in March 2012, implicating federal rights. *See, Smith v. LaClair*, No. 04 CIV. 4356 (SAS), 2008 WL 728653, at *3 (S.D.N.Y. Mar. 17, 2008) ("The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution which is imposed on the States through the Due Process Clause of the Fourteenth Amendment.") (citation omitted).  That portion of the claim is procedurally defaulted, as already discussed, but it would be cognizable.[14]

The Court agrees, though, that the other claims that Respondent has identified as "non-cognizable" are based on New York State law and are therefore non-cognizable in this proceeding.  For example, to the extent Petitioner believes that the trial court erred in denying his speedy trial motion under CPL § 30.30, the claim is not cognizable. *See*, *Smith v. LaClair*, No. 04 CIV. 4356 (SAS), 2008 WL 728653, at *3 (S.D.N.Y. Mar. 17, 2008) ("[A] violation of a state statute such as CPL § 30.30 is not cognizable on federal habeas review. . . .  C.P.L. § 30.30 sets forth a statutory time frame in which the People of the State of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial.  Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim. Thus, even if the trial court violated CPL § 30.30 by failing to hold an evidentiary hearing, such failure cannot support a due process claim in a federal habeas proceeding.").

---

[13] Petitioner's reply expressly references a Sixth Amendment speedy trial claim.
[14] As discussed below, in addition to being denied as procedurally defaulted, the claim also lacks merit.

Similarly, Petitioner's contention that the prosecutor was required to provide a notice under CPL § 710.30, concerning Bour's testimony, is not cognizable. *See, e.g., Green v. Kirkpatrick*, No. 9:16-CV-1407 (FJS), 2017 WL 4174794, at *6 (N.D.N.Y. Sept. 19, 2017) ("Regarding Petitioner's claims that the trial court should have precluded the victim's call to 911 and a photo array identification because the prosecutor failed to serve timely notice of intent to offer this evidence at trial under CPL § 710.30, the Court dismisses these claims as not cognizable because they involve only the prosecution's alleged failures to comply with a state procedural rule."); *see also, Arroyo v. Racette*, No. 6:15-CV-06177 (MAT), 2016 WL 5468112, at *3 (W.D.N.Y. Sept. 29, 2016) ("To the extent that petitioner argues that the state statute was violated because the People failed to serve a proper § 710.30 notice, that claim is not cognizable on habeas review.").

The same goes for Petitioner's contentions that he could not be indicted for crimes that were not included in the felony complaint, that there were deficiencies in the grand jury proceedings, that he did not receive a felony complaint hearing, and that the People were required to have testify at trial all of the persons on their witness list. *See, e.g., Watkins v. Colvin*, No. 16CV04055LAPBCM, 2019 WL 8274256, at *20 (S.D.N.Y. Aug. 30, 2019) ("[Petitioner challenges] the People's compliance with CPL § 180.10[, which] statute gives a defendant arraigned on a felony complaint the right to a prompt probable cause hearing; the failure to provide such a hearing, however, does not constitute a constitutional violation."), report and recommendation adopted, No. 16CIV4055LAPBCM, 2020 WL 1436708 (S.D.N.Y. Mar. 23, 2020); *see also, Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."); *Proctor v. McCarthy*, No. 19CV2988GBDJLC, 2020 WL 1149660, at *9 (S.D.N.Y. Mar. 10, 2020) ("[I]t is well-

settled that claims based on the sufficiency of the evidence presented to a state Grand Jury are not cognizable under federal law and thus are not reviewable in a habeas corpus petition.") (citation omitted).  In that regard, while Petitioner does not identify a particular state law in connection with each of those claims, it appears nonetheless he is relying on his understanding of state law, as there is no indication that he is relying on federal law.

Consequently, the following claims are denied as not cognizable: Claim 3; Claim 4 insofar as it is based on CPL 30.30; the portion of Claim 5 alleging a violation of CPL § 710.30; Claim 6; and Claim 10.

<u>The Cognizable Claims Lack Merit</u>

To summarize the foregoing discussion, the only cognizable claims in the Petition are Claim 1 (legal insufficiency of burglary conviction), Claim 2 (legal insufficiency of evidence to convict under Counts II and III), Claim 4 (insofar as it alleges a federal constitutional speedy trial violation), Claim 7 (ineffective assistance of trial counsel based on counsel's failure to cross-examine Bour, counsel's failure to object to the testimony of the Wegmans employees on the grounds that they were not present in the store when the credit card was used, and counsel's failure to make a pretrial motion based on the fact that some charges in the Indictment had not been included in the Felony Complaint), Claim 8 (ineffective assistance of appellate counsel based on counsel's improper admission in the appellate brief that Petitioner had possessed stolen property and been seen in possession of stolen property, counsel's failure to argue that the charges for Criminal Possession of a Forged Instrument and Criminal Possession of Stolen Property were not included in the Felony Complaint, counsel's failure to argue that there was no evidence that Petitioner had used a stolen credit card or been in possession of stolen property, counsel's failure to argue that Petitioner had been denied a felony hearing,

counsel's failure to argue that Petitioner was denied the opportunity to appear in the Grand Jury and counsel's failure to argue on appeal that the "whole case against Petitioner was based on hearsay") an Claim 9 (insufficient evidence that Petitioner possessed stolen property).   Claim 9 is redundant of Claim 2.[15]   Consequently, the Petitioner really presents just five cognizable claims: Legal insufficiency of evidence to support the burglary conviction, legal insufficiency of evidence to convict under Counts II and III of the Indictment, ineffective assistance of trial counsel and ineffective assistance of appellate counsel.  Of these, as already discussed, the only exhausted claims are for the legal insufficiency of the burglary conviction claim and the ineffective assistance of trial counsel claim relating to counsel's failure to cross-examine Bour.   The remaining claims are procedurally defaulted.  Nevertheless, for the reasons discussed below, these claims also lack merit.

Sufficiency of the Evidence

The Court earlier referred to the standard for evaluating challenges to the sufficiency of evidence in its discussion of "actual innocence":

> A challenge to the sufficiency of the evidence [is] amenable to federal habeas review. *See Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (*citing Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993) ). To analyze the sufficiency of the evidence of a state conviction, "'[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula*, 297 F.3d at 179 (quotation omitted). A habeas petition challenging the sufficiency of the evidence supporting a state-court conviction fails if "any rational trier of fact could have found the essential elements of the crime beyond a

---

[15] Claim 9 also contains a reference to "uncharged crimes," by which Petitioner means that he was improperly convicted of the "uncharged crimes" of possessing the stolen bicycle and backpack.  However, Count III of the Indictment charged Petitioner with criminal possession of stolen property based on his possession of the stolen credit card, and the trial court clearly instructed the jury that to convict Petitioner under Count III of the indictment is would need to find that he criminally possessed stolen property consisting of "a credit card or debit card." ECF No. 12-3 at p. 801.  It is unclear why Petitioner believes that he was convicted for possessing the bicycle or the backpack, but, regardless, the argument lacks merit in addition to being unexhausted.

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This standard places a "'heavy burden'" on a habeas petitioner. *See United States v. Parkes*, 497 F.3d 220, 225 (2d Cir. 2007) (quotation and other citations omitted). When making its determination, the court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

*Chaplin v. Kirkpatrick*, No. 917CV00718MADDEP, 2018 WL 6605917, at *4 (N.D.N.Y. Dec. 17, 2018).

Burglary in the Second Degree

Under New York Law, "[a] person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when: . . . 2. The building is a dwelling." PL § 140.25(2).  Here, Petitioner contends that the evidence was insufficient to support his conviction for Burglary in the Second Degree, stating:

> There was no testimony at trial that [I] was seen at or near the home.  No fingerprints or DNA evidence of [mine was found] at the home.  [I] was never found in possession of burglary tools.  No one [said] I did it.  The home was not even broke[n] into.  There is testimony at trial on this issue.  Well, there was but they gave testimony [that] the home was not broke into at all.

Pet. (ECF No. 1) at p. 5.

Petitioner's arguments on this point lack merit. It is undisputed that no one saw Petitioner commit the burglary or possess burglar's tools, and it is further undisputed that no evidence was found directly linking him to the burglary such as fingerprints or DNA. The Prosecution never claimed otherwise.  Rather, the Prosecution argued that the jury could reasonably infer that Petitioner committed the burglary under the theory of recent and exclusive possession, since he was observed on videotape shortly after the burglary, slightly more than a mile away from the crime scene, in possession of items taken from

the home, namely, the bicycle, the backpack and the credit card, which only the burglar would likely have.

> In evaluating the sufficiency of the evidence supporting a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999). In cases involving stolen property, such as robberies and burglaries, New York utilizes a "recent and exclusive possession presumption," which provides that "evidence of unexplained or falsely explained possession of recently stolen property is sufficient to establish a prima facie case and to enable a jury to find guilt beyond a reasonable doubt." *People v. Baskerville*, 60 N.Y.2d 374, 382, 469 N.Y.S.2d 646, 457 N.E.2d 752 (1983). In other words, "the recent possession of the fruits of crime is evidence of the crime itself, as of robbery, burglary." *Knickerbocker v. People*, 43 N.Y. 177, 181 (1870).
>
> If a defendant is able to provide a reasonable explanation for possessing the stolen property, or if there is reasonable evidence to suggest that the defendant received the stolen property from another person, then a jury may conclude that the defendant was a part of the underlying theft or merely received the stolen property from someone else. *See Baskerville*, 60 N.Y.2d at 382-83, 469 N.Y.S.2d 646, 457 N.E.2d 752. However, if there is no evidence showing that a defendant received the stolen property from someone else, or if a defendant makes no attempt to explain the possession or provides a false explanation, then a jury may infer that he was the thief. *Id. See also, e.g., People v. Everett*, 10 N.Y.2d 500, 508–10, 225 N.Y.S.2d 193, 180 N.E.2d 556 (1962). This inference, if accepted by a jury, is sufficient to find a defendant guilty beyond a reasonable doubt. *See, e.g., Baskerville*, 60 N.Y.2d at 382, 469 N.Y.S.2d 646, 457 N.E.2d 752; *People v. Shurn*, 69 A.D.2d 64, 68, 418 N.Y.S.2d 445 (2d Dep't 1979) (holding that the inference is "sufficient to constitute prima facie proof of the identity of the possessor as the perpetrator of the crime").

*Walker v. Brown*, No. 08-CV-1254 (BMC), 2009 WL 2030618, at *4 (E.D.N.Y. July 10, 2009).[16]   Petitioner avoids this point, and instead, insists that he cannot be guilty of

---

[16] *See, Stenson v. Heath*, No. 11 CIV. 5680 RJS AJP, 2012 WL 48180, at *5 (S.D.N.Y. Jan. 10, 2012) (Explaining that the doctrine of recent and exclusive possession "is based on *People v. Galbo*, which held that: "It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal. That rule has most frequently been applied in cases of burglary and larceny and receiving stolen goods . . . ." *People v. Galbo*, 218 N.Y. 283,

burglary in the absence of some direct evidence thereof.  Petitioner is mistaken, since viewing the evidence in the light most favorable to the prosecution *and drawing all inferences in the prosecution's favor*, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

As for Petitioner's contention that there was no evidence that the home was "broken into," he is referring to the fact that there was no evidence of forced entry.  Rather, the evidence indicated that the intruder entered the home through an unlocked door.  However, Petitioners' argument again lacks merit, since there was clearly sufficient evidence that a burglary occurred.  To the extent Petitioner contends that there needed to be additional evidence of a forced entry, he is mistaken. *See, High v. Miller*, No. 16-CV-00984 (JFB), 2017 WL 1629139, at *9 (E.D.N.Y. May 2, 2017) ("Contrary to petitioner's contention, burglary in the second degree can be charged even absent forced entry. *See People v. Melendez*, 613 N.Y.S.2d 867, 867-68 (N.Y. App. Div. 1994) (affirming defendant's conviction of second-degree burglary even though defendant contended that the People did not prove that defendant's entry into the home was unlawful because "there was no evidence of forced entry"); *People v. Cooper*, 571 N.Y.S.2d 114, 115-16 (N.Y. App. Div. 1991) (affirming defendant's conviction of burglary in the second degree when no signs of forced entry into the residence existed)").

---

290, 112 N.E. 1041 (1916) (Cardozo, J.) (citations omitted)), report and recommendation adopted, No. 11-CV-5680 RJS AJP, 2015 WL 3826596 (S.D.N.Y. June 19, 2015).

<u>Criminal Possession of a Forged Instrument in the Second Degree</u>
<u>Criminal Possession of Stolen Property in the Fourth Degree</u>

Petitioner also contends, in Claim 2, that there was insufficient evidence to find

him guilty of Criminal Possession of a Forged Instrument in the Second Degree and

Criminal Possession of Stolen Property in the Fourth Degree, stating:

> There was no testimony at trial that Keith Carmel signed a receipt and the
> defendant was never found in possession of any kind of forged instrument
> of any kind.  There was no testimony at trial on this issue.    As well there
> was no testimony at trial that the defendant used a credit card and/or was
> found in possession of a stolen credit card.  No one said I did it.  There are
> no felony complaints on these (2) charges.[17]

Pet., ECF 1 at p. 7.

Under New York Law, "[a] person is guilty of criminal possession of a forged

instrument in the second degree when, with knowledge that it is forged and with intent to

defraud, deceive or injure another, he utters or possesses any forged instrument of a kind

specified in section 170.10." PL § 170.25 (McKinney).  PL § 170.10(1) includes a

"contract, assignment, commercial instrument, credit card, as that term is defined in

subdivision seven of section 155.00, or other instrument which does or may evidence,

create, transfer, terminate or otherwise affect a legal right, interest, obligation or

status[.]"[18]  A forged credit card receipt is included under the definition in PL § 170.10(1).

*See, People v. Le Grand*, 81 A.D.2d 945, 946, 439 N.Y.S.2d 695, 697 (1981) ("[W]e

---

[17] This last sentence relates to Petitioner's incorrect and non-cognizable assertion that under New York
law he could not be indicted for a crime that had not previously been included in a felony complaint.
[18] At trial the court instructed the jury that to convict defendant it would need to find, in part, that "the
defendant, Keith Edward Carmel, uttered or possessed a forged instrument which is or purports
to be or which is calculated to become or to represent, if completed, an instrument which does or may
evidence, create, transfer, terminate, or otherwise effect a legal right, interest, obligation or status. Here,
the Wegmans receipt, which was received in evidence as Exhibit Number 6." ECF No. 12-3 at pp. 797–
798.

recognize that a credit card receipt or voucher constitutes a "written instrument" for purposes of the forgery statute (see Penal Law, § 170.00, subd. 1).").

Under New York Law, "[a] person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when: . . . 2. The property consists of a credit card, debit card or public benefit card[.]" PL § 165.45(2) (McKinney).

At trial, the video and electronic evidence from Wegmans together indicated that the person shown on video, whose face was visible and who Bour further identified as Petitioner, paid for the purchase by swiping the stolen credit card, which he possessed at that time, through the card reader, signed the electronic keypad and then exited the store with the merchandise and the forged credit card receipt. Accordingly, a rational trier of fact could have found the essential elements of both Criminal Possession of a Forged Instrument in the Second Degree and Criminal Possession of Stolen Property in the Fourth Degree beyond a reasonable doubt. Consequently, Petitioner's legal insufficiency arguments (Claim 1 and Claim 2 in the Petition) lack merit.

<u>Speedy Trial</u>

As discussed earlier, as part of Claim 4 the Petition states: "I was incarcerated from July 28, 2010 to date trial did not start til March 2012." [sic]. The Court liberally construes this statement to raise a Sixth Amendment speedy trial claim.

> The determination of whether pre-trial delay violates the Sixth Amendment is governed by *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which identified four factors "courts should assess in determining whether a particular defendant has been deprived of his right[:] Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* further instructed that the

weight given to the individual factors must be evaluated on a case-by-case basis[.]

*Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir. 2003).   On this point, the Second Circuit has further stated:

> "Whether a criminal defendant's right to a speedy trial has been violated is circumstance-dependent and determined by the multi-factor balancing test established in" *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which "weighs 'the conduct of both the prosecution and the defendant' by evaluating several factors, 'some' of which include the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *United States v. Ray*, 578 F.3d 184, 191 (2d Cir.2009) (quoting *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. 2182); *see also Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir.2003) (applying *Barker* factors in reviewing denial of § 2254 petition). These factors "must be considered together with such other circumstances as may be relevant," and "have no talismanic qualities." *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. 2182. Rather, they require courts to "engage in a difficult and sensitive balancing process." *Id.*

*Smith v. La Clair*, 353 F. App'x 486, 487 (2d Cir. 2009).

Here, the period at issue between Petitioner's arrest and the start of the trial is nineteen months.  Petitioner was in custody that entire time, but he was jailed only four months while awaiting trial on the subject charges.  During the remaining fifteen months, Petitioner was in state prison serving his sentence for a parole violation.[19]  The People first announced their readiness for trial on February 28, 2011, one year before the trial began.  Argument of motions was scheduled for April 2011.  On April 4, 2011, the trial court scheduled the trial to begin on October 4, 2011, without objection.  On May 2, 2011, Petitioner complained that he wanted a new attorney, and the trial court further adjourned the argument of motions, until May 23, 2011, to allow defense counsel time to meet with

---

[19] Petitioner's reply indicates that he was released from state custody on October 31, 2011, four months before the trial began.  The trial court set bail, which Petitioner was unable to post.

Petitioner.   On May 23, 2011, the trial court further adjourned the matter until June 6, 2011, at the request of defense counsel.   On June 6, 2011, the matter was adjourned for an additional week after Petitioner reportedly refused to come to court.   The next appearance was on June 20, 2011, for a status conference and argument of motions. The trial court ruled on the motions and reiterated that the trial was still set to begin on October 4, 2011.  In the meantime, Petitioner renewed his request for new counsel, and, on September 12, 2011, the trial court granted that application and appointed new counsel.  However, before granting the application, the court asked Petitioner whether he understood that the trial (which was scheduled to begin in less than a month) would be delayed if the court did so, to allow the new attorney time to prepare, to which Petitioner responded, "All right.  I understand."[20]   The court then appointed new counsel, and new counsel requested an adjournment until October 3, 2011, to allow him to review the file. On October 3, 2011, defense counsel filed additional motions on Petitioner's behalf, and the court set a new trial date of February 27, 2012, without objection.   On February 24, 2012, defense counsel filed a motion to dismiss on speedy trial grounds pursuant to CPL § 30.30.  On February 27, 2012, the trial court indicated that it was considering the motion, and that the trial would begin on February 28th.  However, on February 28, 2012, the Hall of Justice in Rochester was closed due to a power outage.  On February 29, 2012, the trial court conducted a hearing on the speedy trial application, denied the motion, and began jury selection.  On March 1, 2012, the jury was sworn.

Again, this claim is unexhausted, since Petitioner never asked any state court to consider whether the nineteen-month period between his arrest and trial resulted in a

---

[20] ECF No. 12-3 at p. 27.

violation of his Sixth Amendment rights.  Nevertheless, the claim lacks merit since the facts in no way support a Sixth Amendment violation.  There was no unreasonable delay, and what delays there were occurred at the request of, or due to the actions of, Petitioner. Petitioner did not assert any speedy trial right until the eve of trial.  Moreover, Petitioner has not made any showing of prejudice.  Consequently, even assuming that the speedy trial claim had been exhausted, the Court would deny it on the merits.[21]

<u>Ineffective Assistance of Trial Counsel</u>

Petitioner contends that his trial attorney provided ineffective assistance of counsel in violation of his Sixth Amendment rights.   As already mentioned, Petitioner specifically contends that counsel was ineffective in three respects: He failed to cross-examine Bour concerning his identification of Petitioner; he failed to object to the testimony of a Wegman's employee who testified concerning electronic records but was not present at the store when the credit card was used; and he failed to filed a pre-trial motion objecting to the fact that Counts II and III of the Indictment (Criminal Possession of a Forged Instrument and Criminal Possession of Stolen Property) were not included in the Felony Complaint.  Only the first ground is exhausted, but all three grounds lack merit.

---

[21] *See, Wilson v. Henderson*, 584 F.2d 1185, 1192 (2d Cir. 1978) ("Wilson complains that the twenty month interval between his indictment and his trial violated his Sixth Amendment right to a speedy trial. The delay appears to have been caused largely by adjournments requested by defense counsel. When original counsel was [replaced,] further postponement was necessary in order to give the new counsel time to familiarize himself with the case. The petitioner did not object to the delay until one month before trial, and there was no indication that he was prejudiced by the delay. Under these circumstances, Wilson has not suffered a violation of his Sixth Amendment right to a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 530-532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States ex rel. Spina v. McQuillan*, 525 F.2d 813, 817-818 (2d Cir. 1975); *United States v. Drummond*, 511 F.2d 1049, 1054 (2d Cir.), *cert. denied* 423 U.S. 844, 96 S.Ct. 81, 46 L.Ed.2d 65 (1975); *United States v. Infanti*, 474 F.2d 522, 527-528 (2d Cir. 1973).").

The familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating an ineffective assistance of counsel claim has two prongs. The first requires showing that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688, 694. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). Fulfilling the second prong of an ineffective assistance claim requires a showing of prejudice which translates to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The habeas petitioner bears the burden of establishing both deficient performance and prejudice." *Greiner*, 417 F.3d at 319 (citing *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004)).

A defense attorney cannot be deemed ineffective for failing to pursue an unmeritorious defense or application. *See, United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance, *see United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir.), cert. denied, 506 U.S. 979, 113 S.Ct. 477, 121 L.Ed.2d 383 (1992), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066; *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir.1992), cert. denied, 507 U.S. 998, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993); *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir.1990).").

Petitioner's contention that counsel was ineffective for failing to cross-examine Bour lacks merit since counsel expressly indicated that he made a strategic decision not to do so, and that decision was reasonable.  In particular, counsel wanted to avoid any testimony concerning the fact that Bour was a parole officer who was familiar with Petitioner from having supervised him on parole for over a decade.  In any event, the failure to cross-examine Bour was insignificant since the video evidence was clear enough that the jury was free to decide for itself whether Petitioner was the person shown on the video, and the jury was instructed that it could not convict Petitioner unless it was convinced beyond a reasonable doubt that Petitioner was the person who committed the crimes.[22]

Petitioner's contention that his attorney was ineffective for failing to object to the testimony of a Wegmans employee, who testified concerning information in the store's computer system, on the ground that she was not present when the stolen credit card was used, also lacks merit since it incorrectly assumes that was a valid objection.  In any event, defense counsel objected to the introduction of that evidence on other grounds, and he strenuously cross-examined the witness about the reliability of the Wegmans computers.

Finally, Petitioner's contention (apparently based on nothing more than his subjective opinion) that his attorney should have filed a motion objecting to the fact that Counts II and III of the indictment were not included in the felony complaint, also lacks merit, since such an application would have failed:

> As for Petitioner's claim that his trial counsel should have challenged the discrepancy between the Felony Complaint and the Indictment, New York law offers no ground for such a challenge. Rather, the law provides that,

---

[22] ECF No. 12-3 at p. 787.

while a felony complaint serves as the basis for the commencement of a criminal action, *see* N.Y.C.P.L. § 100.10(5), that instrument is superseded, and thus rendered legally irrelevant for purposes of challenging a subsequent conviction, by the grand jury's decision to indict, *see Brown v. Perlman*, No. 03cv2670 (RJH), 2006 WL 2819654, at *6 (S.D.N.Y. Sept. 29, 2006) ("[T]he grand jury indictment superceded any prior accusatory actions, rendering any alleged pre-indictment deficiencies irrelevant."); *People v. Smith*, 757 N.Y.S.2d 491, 491 (2d Dep't 2003) ("[E]ven if the felony complaint was defective, it was superseded by a valid indictment, rendering any claim regarding a purported defect in the felony complaint academic."). In deciding whether to issue an indictment, the grand jury is free to make an "independent determination that there is legally sufficient evidence that crimes have been committed and reasonable cause to believe that the defendant committed the crimes charged," regardless of what information appears in the initial accusatory instrument. *Black*, 705 N.Y.S.2d at 698 (citing *People v. Wicks*, 76 N.Y.2d 128, 133 (1990)). *Indeed, New York law does not prohibit the grand jury from returning an indictment even on charges that were not included in a prior felony complaint.* See N.Y.C.P.L. § 190.65(2).

*McKelvey v. Bradt*, No. 13CV3527 (CM) (DF), 2016 WL 3681457, at *15 (S.D.N.Y. July 6, 2016) (emphasis added).

<u>Ineffective Assistance of Appellate Counsel</u>

Petitioner contends that his appellate attorney provided ineffective assistance of counsel in violation of his Sixth Amendment rights.  As already mentioned, Petitioner specifically contends that appellate counsel was ineffective by admitting, in the appellate brief, that Petitioner had possessed stolen property and been seen in possession of stolen property.   Petitioner further contends that appellate counsel should have argued that Petitioner's speedy trial rights were violated, that the charges for Criminal Possession of a Forged Instrument and Criminal Possession of Stolen Property were not included in the Felony Complaint, that there was no evidence that Petitioner had used a stolen credit card or been in possession of stolen property, that Petitioner had been denied a felony

hearing, that Petitioner did not have the opportunity to appear in the Grand Jury and that the "whole case against Petitioner was based on hearsay."   This entire claim is unexhausted and lacks merit in any event.

As a preliminary matter, Petitioner's assertion, that appellate counsel harmed him by conceding that he possessed stolen property and/or that he was seen in possession of stolen property, is unfounded.  Rather, appellate counsel merely stated, as part of a legal argument directed at the burglary conviction, that the evidence *viewed in the light most-favorable to the prosecution* merely showed Petitioner to be in possession of stolen property: "That video, viewed in a light most favorable to the People, showed that sometime after the burglary (perhaps hours afterwards) an individual, later identified as Mr. Carmel, with some of the items taken in the burglary. While that evidence might suffice for possession of stolen property or forgery convictions, it cannot sustain a conviction for burglary."[23]  Appellate counsel made a few additional statements in that same vein and context, namely, that while the evidence viewed in the light most-favorable to the prosecution might have shown Petitioner in possession of stolen property, that was insufficient evidence of guilt.  Appellate counsel's statements in that regard do not amount to ineffective assistance of counsel, but, rather, they were factually correct and part of a sound strategy to primarily attack the legal sufficiency of the burglary conviction, for which Petitioner was sentenced to sixteen years to life.

As for the remainder of the claim, that appellate counsel failed to raise certain arguments on appeal, the applicable legal principles are clear:

> With respect to claims of ineffective assistance of appellate counsel, the Supreme Court has also held, as relevant here, that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim,

---

[23] ECF No. 12-2 at p. 84.

but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (describing *Barnes*, 463 U.S. 745, 103 S.Ct. 3308); *see also Lynch v. Dolce*, 789 F.3d 303, 319 (2d Cir. 2015).

*Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015). "Counsel's failure to raise a claim on appeal constitutes "constitutionally inadequate performance" where "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Morales v. United States*, 651 F. App'x 1, 5 (2d Cir. 2016) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994), also *citing Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998)).

Here, none of the points raised by Petitioner involve "significant and obvious issues" that were "clearly and significantly" stronger than the issues raised by appellate counsel.  Rather, to the extent that they have any potential merit at all,[24] the issues raised by Petitioner are weaker than the issues that appellate counsel actually raised. Consequently, even if the claim was exhausted it would be denied on the merits.

## CONCLUSION

The application under 28 U.S.C. § 2254 is denied.  The Clerk of the Court is directed to close this case.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be

---

[24] Some of them are clearly meritless for reasons already discussed.

directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: Rochester, New York
November 5, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge